# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| HENRY TANYIKE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:21-cv-311 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Defendant. | : | |
| | : | |

___

### ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE (DOC. NO. 10)
___

Henry Tanyike ("Tanyike") filed his Complaint (Doc. No. 1) in this Court against the United States of America ("Government"), alleging two causes of action related to his time in the custody of Immigration and Customs Enforcement ("ICE") in Louisiana. Presently before the Court is the Government's Motion to Transfer Venue or, in the Alternative, to Dismiss for Improper Venue (the "Motion"). (Doc. No. 10.) In the Motion, the Government argues that venue is improper in the Southern District of Ohio because Tanyike cannot establish that he resides in the district under 28 U.S.C. § 1391(c)(1) given that he is not a permanent resident. (*Id.* at PageID 30-34.) In the alternative, the Government argues that a transfer to the Western District of Louisiana would be appropriate, in part, because most of the witnesses and relevant sources of proof are located in Louisiana. (*Id.* at PageID 37-42.)

For the reasons discussed below, the Court **DENIES** the Motion to Transfer Venue or, in the Alternative, to Dismiss for Improper Venue in its entirety.

1

## I. BACKGROUND

On June 4, 2019, Tanyike arrived at the port of San Ysidro, California and made a request for asylum to United States Customs and Border Protection. (Doc. No. 1 at PageID 2.) Tanyike had fled his home country of Cameroon because he had been arrested twice by the military as a result of his political activities. (*Id*.) After requesting asylum, Tanyike was transferred to ICE custody. (*Id*.) On January 14, 2021, Tanyike was in ICE custody at the Winn Correctional Center ("WCC") in Winnfield, Louisiana. (*Id*. at PageID 1.) On that day, Tanyike alleges he was directed to a room where six ICE officers were waiting. (*Id*. at PageID 3.) Tanyike was allegedly told that he needed to sign a piece of paper and provide a fingerprint. (*Id*.) Tanyike refused to sign or fingerprint the document without showing it to his lawyer. (*Id*.) The officers allegedly threw Tanyike to the ground, as "[o]ne ICE officer pressed on Mr. Tanyike's neck, and other officers climbed on his back." (Doc. No. 1 at PageID 3.) The officer who pressed on Tanyike's neck did so for two minutes before the officers handcuffed Tanyike behind his back. (*Id*.)

On November 17, 2021, Tanyike filed his Complaint against the Government alleging claims for battery and intentional infliction of emotional distress pursuant to the Federal Tort Claims Act (28 U.S.C. § 2679, *et seq*.). (*Id*. at PageID 5-7.) The Complaint alleges that venue is proper under 28 U.S.C. § 1402(b) because Tanyike resides in Dayton, Ohio. (*Id*. at PageID 2.)

On February 28, 2022, the Government filed the present Motion. (Doc. No. 10.) Tanyike filed his response on March 28, 2022 (Doc. No. 12), and the Government filed its reply on April 11, 2021 (Doc. No. 13). The Motion is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

When a party challenges venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that the current venue is proper. *Ring v. Roto-Rooter Servs. Co.*, No. 1:10-CV-179, 2010 U.S. Dist. LEXIS 108202, at *9 (S.D. Ohio Sept. 28, 2010); *Contech Bridge Sols., Inc. v.*

*Keaffaber*, No. 1:11-cv-216, 2011 U.S. Dist. LEXIS 122875, at *33, 2011 WL 5037210 (S.D. Ohio Oct. 24, 2011).  The district court has the discretion to decide the appropriate procedure for deciding a motion to dismiss for improper venue.  *Ring*, 2010 U.S. Dist. LEXIS 108202, at *9; *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002).  Where a motion is decided solely on the pleadings and attached affidavits, viewed in the light most favorable to the plaintiff, plaintiff need only present a *prima facie* case that venue is proper.  *Ring*, 2010 U.S. Dist. LEXIS 108202, at *9; *Barton v. Florida*, No. 2:06-cv-78, 2006 U.S. Dist. LEXIS 68815, at *5, 2006 WL 2773238 (S.D. Ohio Sept. 25, 2006).

### III.  ANALYSIS

The Government argues that Tanyike cannot establish venue in the Southern District of Ohio because he cannot show that he "resides" in this district.  (Doc. No. 10 at PageID 30-34.)  The Government further argues that the balance of interests weigh in favor of transferring this matter to the Western District of Louisiana.  (*Id*. at PageID 37-42.)

**A.  Improper Venue**

Chapter 87 of Title 28 to the United States Code (28 U.S.C. 1390, *et seq.*) governs venue for federal district courts.  Where a plaintiff seeks to pursue a tort claim against the United States, the action may be brought "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C. § 1402(b).  However, Section 1402 does not provide a definition for "resides," which means the Court looks to the definition of "residency" contained in 28 U.S.C. § 1391(c) to determine whether a suit has been properly brought in this district pursuant to Section 1402.  *See Petrovic v. United States*, No. 16-418, 2016 U.S. Dist. LEXIS 203242, at *2 (E.D. Ky. Nov. 15, 2016).  Section 1391(c)(1) provides, "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled."  28 U.S.C. § 1391(c)(1).  Encapsulated

within residence is the intent to remain as part of the concept of domicile or, "residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 494 (6 Cir. 2016) (citing *Mitchell v. United States*, 88 U.S. 350, 352, 22 L. Ed. 584, 10 Ct. Cl. 120 (1874)).

The Government argues that a person who has not been lawfully admitted to the United States cannot form the intent to remain in this district under Section 1391(c)(1). (Doc. No. 10 at PageID 31.) The Government further argues that the 2011 amendments to Section 1391 show that those amendments were made to extend a venue defense only to the limited subset of natural persons known as legal permanent residents. (*Id*. at PageID 32-33.) In response, Tanyike argues that the term "including" prior to "an alien lawfully admitted for permanent residence" in Section 1391(c)(1) demonstrates the group is illustrative of "a natural persons" rather than limiting those persons to permanent residents. (Doc. No. 12 at PageID 50-52.) Tanyike further argues that he is lawfully present in the United States because he has a pending asylum application. (*Id*. at PageID 55-57.) Therefore, Tanyike argues he has the ability to form the lawful intent to remain in this district. (*Id*.)

The disputed language states, "a natural person, *including an alien lawfully admitted for permanent residence in the United States*, shall be deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1) (emphasis added). To be even more specific, part of the argument turns on the meaning and use of the word "including," in Section 1391(c)(1).

The term "include" is defined as, "[t]o contain as a part of something. The participle including typically indicates a partial list. . . ." *Include*, BLACK'S LAW DICTIONARY (11th ed. 2019). Indeed, the Supreme Court has stated that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land*

4

*Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S. Ct. 1 (1941) (citing *Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 189, 61 S. Ct. 845 (1941)); *see also Samantar v. Yousuf*, 560 U.S. 305, 317, 130 S. Ct. 2278 (2010) ("[i]t is true that use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive").

Concerning whether an alien seeking asylum (like Tanyike) can establish venue in a forum where he or she is domiciled, some courts have ended the analysis by finding Section 1391 to be unambiguous because those courts have found that the language "including an alien lawfully admitted for permanent residence" is an illustrative example or does not exclude aliens from being a "natural person" under the statute. *Flores v. United States*, 108 F. Supp. 3d 126, 130 (E.D.N.Y. 2015); *Alvarado v. United States*, No. 16-5028, 2017 U.S. Dist. LEXIS 80894, at *6, 2017 WL 2303758 (D.N.J. May 25, 2017) ("[t]he plain text of 1391(c)(1) authorizes *all* non-citizens–regardless of [Legal Permanent Resident] status–to establish residency where they are domiciled) (emphasis in original). This Court is not persuaded that the analysis should end with the statutory language. By the reasoning of these other courts "natural persons" under Section 1391(c)(1) would cover all human beings.[1] It begs the question, why include the language "including an alien lawfully admitted for permanent residence" if it serves no purpose? If every human being is included, why single out one specific group? In short, the Court finds the statue to be ambiguous with respect to this particular issue.

Where a statute is ambiguous, the Court may look to the legislative history to clarify the ambiguity. *Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 371-72 (6th Cir. 2007) (citing *Garcia v. United States*, 469 U.S. 70, 76 n.3, 105 S. Ct. 479 (1984)). In this instance, the legislative history offers two salient points that clarify the purpose of the amendments

---

[1] A natural person is simply an individual human, "person (13c) 1. A human being. — Also termed natural person." *Person*, BLACK'S LAW DICTIONARY (11th ed. 2019)

5

to Section 1391(c).  First, the legislative history states:

> In keeping with the consistent focus of determining venue by reference to the domicile of natural persons, the deletion of the current language of 28 U.S.C. § 1391(d), combined with the proposed amendment to paragraph 1391(c)(1), would also permit permanent resident aliens domiciled in the United States to raise a venue defense.

H.R. Rep. 112-10, 23 (2011).  This language is further explained by a footnote, which states:

> An alien can obtain a "lawful domicile" in the United States only if he or she has the ability under the immigration laws to form the intent to remain in this country indefinitely.  *See Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995); *Madrid-Tavarez v. INS*, 999 F.2d 111 (5th Cir. 1993).  Such an interpretation of domicile under the venue statute as including lawful intent to remain would foreclose the possibility that an undocumented alien would be regarded as a domiciliary of the United States for venue purposes.

*Id*. at 22 n. 16.  Indeed, one of the cases cited in the footnote found that immigrants could establish domicile if they established the lawful intent to remain.  *Castellon-Contreras*, 45 F.3d at 153 ("[i]n order to have a 'lawful domicile,' then, an alien must have the ability, under the immigration laws, to form the intent to remain in the United States indefinitely").

The Government suggests that footnote 16 in the legislative history supports its argument because it "foreclose[s] the possibility that an undocumented alien would be regarded as a domiciliary of the United States for venue purposes."  (Doc. No. 13 at PageID 82.)  Indeed, the Government argues that the footnote suggests that Congress did not intend "to dramatically change the law to grant a venue defense to all noncitizens regardless of their resident status." (Doc. No. 13 at PageID 82.)

The footnote demonstrates that those who have "the ability under the immigration laws to form the intent to remain" can obtain "lawful domicile."  H.R. Rep. 112-10, at 22 n. 16.  Moreover, the footnote makes clear an obvious point as to aliens who enter the country illegally: they cannot harbor the lawful intent to remain in the United States.  *Coyoy v. United States*, 526 F. Supp. 3d 30, 41 (D.N.J. 2021).  Thus, an alien is either a lawful permanent resident or an illegal alien.

However, other groups exist, including those who have been lawfully admitted to this country (such as an asylum seeker), but who have not obtained permanent resident status. These aliens clearly wish to remain in this country and will do so if their applications are granted.

The Court finds that, consistent with the legislative history, if the plaintiff "has the *ability* under the immigration laws to form the intent to remain in this country indefinitely," then he or she can be lawfully domiciled in a particular judicial district and, therefore, reside in that district for venue purposes under Section 1402. H.R. Rep. 112-10, at 22 n. 16 (emphasis added). Thus, if an individual lawfully enters the country using the immigration laws, such as those for asylum seekers, that individual can form the lawful intent to remain in the United States and claim residency under the venue statute.

Indeed, multiple courts have supported this Court's reading of the legislative history of Section 1391(c)(1). *Coyoy*, 526 F. Supp. 3d at 41 (holding that "a natural person is a resident of any district in which he or she is *lawfully* domiciled" and "[s]uch person is one who, even if not a legal permanent resident, lives in the district and possesses a lawful intent to remain"); *Luna v. United States*, No. C20-1152RSL, 2021 U.S. Dist. LEXIS 32757, at *4-6, 2021 WL 673534 (W.D. Wash. Feb. 22, 2021) ("a non-citizen who is lawfully present in the United States, and has taken steps under the immigration laws that objectively manifest an intent to make permanent his residence here can claim residence for purposes of the venue statute"); *Fuanya v. United States*, No. 21-cv-2191, 2022 U.S. Dist. LEXIS 64150, at *9-10, 2022 WL 1027149 (D. Colo. Apr. 6, 2022) ("[a]ccordingly, as concerns aliens, Congress intended that domicile may be established where the alien has an intent to remain which is consistent with — that is, lawful under — federal immigration law").

The Government cites *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018), as the standard

bearer for the meaning of Section 1391(c)(1). However, *In re HTC Corp.* is not a persuasive case in this instance. The case primarily considers whether a foreign corporation could mount a venue defense in a patent dispute. *In re HTC Corp.*, 889 F.3d at 1351. The Federal Circuit evaluated Section 1391(c)(1) as an ancillary concern to where a corporation resides for the purposes of Section 1391(c)(2). *Id*. at 1358-60. The court's analysis on this point is limited and largely supplementary to its holding. *Id*. Needless to say, that court did not evaluate the issue in the context of an immigrant who lawfully arrived in this country, but who is not yet a permanent resident.

There is no dispute that Tanyike arrived in this country and gained entry lawfully, i.e., through using the asylum process. (Doc. No. 10 at PageID 29.) According to the Motion, Tanyike's asylum application is currently before the Board of Immigration appeals and he has been paroled during the pendency of his application for asylum. (*Id*. at PageID 36.) Consequently, Tanyike is not deemed to be in this country unlawfully. 8 U.S.C. § 1182(a)(9)(B)(ii). Moreover, the fact that Tanyike has applied for asylum status demonstrates that he has intent to remain in this country and to do so using the lawful means provided by the laws of the United States. *See* 8 U.S.C. § 1158.

The Government points to the fact that his asylum application was previously denied as evidence that Tanyike cannot possess the lawful intent to remain in this country. (Doc. No. 10 at PageID 36.) However, the record shows that Tanyike appealed this decision to the Ninth Circuit Court of Appeals and the decision is currently under review by the Board of Immigration Appeals ("BIA"). (*Id*.) Tanyike is availing himself of the legal means provided to him by having his asylum application reviewed. BIA may affirm the removal order, or it may grant Tanyike asylum. The outcome will be unknown until the BIA reaches its conclusion. In the meantime, the

Government cannot ignore Tanyike's use of the legal process to which he is entitled in an effort to make his status in this country appear unlawful. Until the BIA orders otherwise, Tanyike is in the United States and the Southern District of Ohio[2] lawfully for the purposes of deciding the venue issue presented in the Motion.

Therefore, the Court finds that Tanyike resides in the Southern District of Ohio for the purposes of 28 U.S.C. § 1391(c)(1) and has established a *prima facie* case that venue is proper in this district under 28 U.S.C. § 1402(b).

### B. Transfer Venue

In the alternative, the Government asks the Court to transfer this action to the Federal District Court for the Western District of Louisiana. (Doc. No. 10 at PageID 37.) Motions to transfer are governed by 28 U.S.C. § 1404(a): "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Before determining whether the interests of justice justifies a transfer, the Court must first determine whether the proposed alternative venue is a district where the action might have been brought. *See* 28 U.S.C. § 1404(a). This prong is not in dispute, however, as the events in question took place in the Western District of Louisiana and this would be an appropriate venue. 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 1402(b).

If an action could have been brought in the alternative venue, then the Court must determine whether a transfer would "prevent wastes of time, energy and money, as well as whether a transfer would protect the litigants, witnesses and the public against unnecessary inconvenience and expense." *Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007)

---

[2] The Government does not dispute that Tanyike intends to remain in Dayton, Ohio if he is permitted to remain in the country permanently.

9

(citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). Factors the Court may consider include:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Coshocton Grain Co. v. Caldwell-Baker Co.*, No. 2:14-cv-2182, 2014 U.S. Dist. LEXIS 161684, at *4, 2014 WL 6473504 (S.D. Ohio Nov. 18, 2014) (quoting *Mardini v. Presidio Developers, LLC*, No. 3:08-cv-291, 2011 U.S. Dist. LEXIS 3326, at *17-8, 2011 WL 111245 (E.D. Tenn. Jan. 13, 2011)).

The Government argues that this Court should transfer this matter to the Western District of Louisiana for several reasons. (Doc. No. 10 at PageID 37.) The predominant reasons the Government cites are related to the location of witnesses and sources of proof, a majority of which are located in Louisiana. (*Id*. at PageID 38.) The Government further argues that the unique nature of Louisiana's Napoleonic code system weighs in favor of transfer. (*Id*. at PageID 41.) Finally, the Government argues that this case has no connection to Ohio outside of the fact that Tanyike currently lives in Dayton. (*Id*. at PageID 38.)

Tanyike argues that this matter should remain here because his choice of forum should be respected. (Doc. No. 12 at PageID 59.) He further argues that the Government possess nearly limitless resources. (*Id*. at PageID 61-2.) Moreover, he argues that video depositions and the electronic transmission of evidence makes it significantly easier to exchange information between Louisiana and Ohio. (*Id*. at PageID 59-62.) Finally, Tanyike argues that it would be unfair to

transfer districts because he has no resources and requiring him to travel to Louisiana would remove him from his sources of mental health counseling. (*Id.*)

Based on these arguments, and given that the proposed alternative venue would be an appropriate venue, the Court must decide whether it should transfer the case to that alternative venue "[f]or the convenience of parties and witnesses, in the interest if justice." 28 U.S.C. § 1404(a).

### 1. Plaintiff's Choice of Forum

Typically, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-CV-105, 2020 U.S. Dist. LEXIS 161335, at *13, 2020 WL 5250435 (S.D. Ohio Sept. 3, 2020) ("[a] plaintiff's choice of venue, however, holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer."). However, where "'the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise.'" *DRFP, LLC v. Republica Bolivariana De Venez*, 945 F. Supp. 2d 890, 902-03 (S.D. Ohio 2013) (quoting *Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C -1-96-1149, 1997 U.S. Dist. LEXIS 7880, 1997 WL 311474, at *3 (S.D. Ohio Mar. 30, 1997)). Here since there is no connection between the events at issue and this district besides Tanyike's presence, this factor weighs minimally in Tanyike's favor.

### 2. Convenience of Witnesses

The Government argues that this case should be transferred because most of the relevant witnesses reside in Louisiana. (Doc. No. 10 at PageID 39-40.) Tanyike argues that these witnesses can be deposed over by videoconference. (Doc. No. 12 at PageID 59.) He further argues that

because the witnesses in question are Government employees, their location carries little weight. (*Id*. at PageID 59-60.)

This Court, and many others, have consistently held that "the convenience of witnesses who are a party's employees will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses." *Zimmer Enters.*, 478 F. Supp. 2d at 991; *Streeter v. Adaptasoft, Inc.*, No. 2:17-cv-1125, 2018 U.S. Dist. LEXIS 143247, at *20, 2018 WL 4030546 (S.D. Ohio Aug. 23, 2018); *Sanhua Int'l, Inc. v. Riggle*, No. 2:17-cv-368, 2019 U.S. Dist. LEXIS 80240, *15-6, 2019 WL 2088431 (S.D. Ohio May 13, 2019).

The Government employs several ICE officers and one nurse who participated in the incident at issue or its immediate aftermath, as well as agency witnesses with knowledge of ICE's use of force protocols, training, and supervision at Winn Correctional Center. (Doc. No. 13 at PageID 86.) The Government has not alleged that these witnesses are no longer Government employees or that they would be unable to secure their participation in any necessary hearings or depositions. At the same time, these witnesses are all located nine hundred miles from this Court. Therefore, any consideration of the convenience of witnesses weighs minimally in the Government's favor.

### 3. Access to Sources of Proof

The Government similarly indicates that the availability of the sources of proof and evidence also weighs in favor of a transfer. (Doc. No. 10 at PageID 38-9.) Tanyike counters that any documentary evidence can be reproduced and transmitted electronically. (Doc. No. 12 at PageID 61.)

The Government has not shown that any piece of relevant evidence could not be made available to Tanyike in Ohio relatively easily. *See Esperson v. Trugreen Ltd. P'tshp*, No. 2:10-cv-

2130, 2010 U.S. Dist. LEXIS 114500, at *28-29, 2010 WL 4362794 (S.D. Ohio Oct. 5, 2010) (finding transfer appropriate where physical evidence, such as vehicles, equipment, and products, were located in another district).  Indeed, modern litigation largely takes place through the use of discovery platforms, file sharing systems, or simply emailing collections of PDFs. *Flagstar Bank, FSB v. Gulfstream Bus. Bank, Inc.*, No. 2:13-cv-12136, 2013 U.S. Dist. LEXIS 161366, at *13, 2013 WL 6017977 (S.D. Ohio Nov. 13, 2013) ("[t]he location of documents and sources of proof have become a less significant factor in the § 1404(a) transfer analysis because of technological advances and availability of documents in electronic form"). It is unclear why these types of discovery could not be utilized in this instance.  Therefore, this factor is of neutral weight.

### 4. Interest of Justice

The Government further argues that the public interest would be best served by transferring this matter to Louisiana.  (Doc. No. 10 at PageID 41.)  First, the Government cites Louisiana's unique use of the Napoleonic code system of law.  (*Id*.)  In response, Tanyike argues that the torts of battery and intentional infliction of emotional distress are largely the same between Louisiana and Ohio.  (Doc. No. 12 at PageID 64-5.)

As Tanyike points out, and the Government does not dispute in its reply, the elements of battery and intentional infliction of emotional distress in Louisiana are largely the same as those in Ohio.  (*Id*.)  Indeed, Louisiana defines battery virtually same as other states. *Compare Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (battery defined as a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact"); *with Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99 (1988) (battery defined as "to cause a harmful or offensive contact, and when a harmful contact results"); *and Devitre v. Orthopedic Ctr. Of St. Louis, LLC*, 349 S.W.3d 327, 334 (Mo. 2011) (to prove battery "the plaintiff must plead and prove an intended, offensive bodily contact with another person") (internal citations omitted).

Similarly, Louisiana defines intentional infliction of emotional distress in a substantially similar way as other states. *Compare White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991) (intentional infliction of emotional distress defined as "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct"); *with Phung v. Waste Mgmt.*, 71 Ohio St. 3d 408, 410 (1994) (intentional infliction of emotional distress defined as "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress"); *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (intentional infliction of emotional distress defined as "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff").

Of course, the interpretation of Louisiana law by a Louisiana court militates in favor of a transfer. This is not an instance, however, where the Court is being asked to interpret unique concepts of law that are further complicated by Louisiana's code system. Instead, the Court will be interpreting torts where the elements in Louisiana are virtually identical to its counterparts in other states, including Ohio. Therefore, any weight this bears on transferring the matter to Louisiana is minimal.

The Government also argues that a transfer is warranted because the docket of the Southern District of Ohio is far more congested than the docket of the Western District of Louisiana. (Doc. No. 10 at PageID 41-2.) However, the figures the Government relies on are misplaced. The disparity in caseload is largely because one judge in this district is handling one of the largest

multidistrict litigation cases in the country: *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. *See Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, No. 2:21-cv-996, 2022 U.S. Dist. LEXIS 28546, at *39-40, 2022 WL 479781 (S.D. Ohio Feb. 17, 2022); *Lynn v. Becton Dickinson & Co.*, No. 2:21-cv-5004, 2022 U.S. Dist. LEXIS 36371, at *12-13, 2022 WL 610819 (S.D. Ohio Mar. 2, 2022). The MDL is not being handled by the undersigned. Thus, this consideration does not weigh in favor of transfer.

The Government also suggests that the presence of counsel for Tanyike in Louisiana should weigh in favor of transfer. (Doc. No. 10 at PageID 40; Doc. No. 13 at PageID 87.) However, this is not a proper consideration for the Court to make as the "'convenience of counsel is not a factor to be considered when ruling on [a] motion for transfer.'" *Sanhua*, 2019 U.S. Dist. LEXIS 80240, at *16 (quoting *United States v. Currency $96,770*, No. 16-cv-11185, 2016 U.S. Dist. LEXIS 175451, at *18, 2016 WL 7367424 (E.D. Mich. Dec. 20, 2016)); *see also Torus Specialty Ins. Co. v. Selection Mgmt. Sys., Inc.*, No. 1:15-cv-755, 2016 U.S. Dist. LEXIS 24539, at *7 n. 5, 2016 WL 776614 (S.D. Ohio Feb. 29, 2016) ("[m]oreover, the location of counsel is an 'improper consideration' in the section 1404(a) analysis.") (citations omitted).

### 5. Relative Means and Resources of the Parties

Tanyike argues that this case should not be transferred because the Government "can draw on a nearly limitless pool of resources." (Doc. No. 12 at PageID 62.) In response, the Government argues that the cost of sending Louisiana-based employees to Ohio would be significant. (Doc. No. 13 at PageID 87.) The Government further argues that Tanyike's concerns of the financial considerations of traveling to Louisiana to litigate the case are unfounded because he has an attorney in Louisiana. (*Id*.)

"Where a disparity exists between the parties, the relative means of the parties may be considered." *Doe v. United States*, No. 3:16-cv-856, 2017 U.S. Dist. LEXIS 178567, at *5-6, 2017

15

WL 4864850 (M.D. Tenn. Oct. 26, 2017) (citing *Flores*, 142 F. Supp. 3d at 289)). Indeed, there is likely no more significant disparity than the one that exists between the Government of the United States and an individual litigant who is seeking asylum. *See Doe*, 2017 U.S. Dist. LEXIS 178567, at *5-6 (finding a significant disparity between an asylum seeker and the United States); *Flores*, 142 F. Supp. at 289 (finding a significant disparity between an asylum seeker and the United States). Therefore, this factor weighs in favor of Tanyike.

Indeed, the Court must consider the interests of justice based on the totality of the circumstances. *Coshocton Grain Co.*, 2014 U.S. Dist. LEXIS 161684, at *4 (citing *Mardini*, 2011 U.S. Dist. LEXIS 3326, at *17-18). The balance of factors in this case has been remarkably even, but one key factor is the disparity between the parties. On one side, the Government possesses a deep pool of resources and can wield the power of the federal government to its advantage. On the other side is an individual with virtually nothing to his name, who came to this country from thousands of miles away. Virtually no other instance could more emphatically demonstrate the disparity that can exist between two parties than that of the power of the Federal Government versus an individual. With all else in balance, the access of an individual to the Court of his choosing in an action alleging abuse by the Government should be respected.

Therefore, the Court finds that transferring this action to the United States District Court for the Western District of Louisiana would not serve the interests of justice.

## IV. <u>CONCLUSION</u>

The Court finds the following:

1. Tanyike has made the requisite *prima facie* showing that the Southern District of Ohio is a proper venue for this action; and

2. Transferring this action to the United States District Court for the Western District

of Louisiana would not serve the interests of justice.

For the reasons stated above, the Court **DENIES** the Government's Motion to Transfer Venue or, in the Alternative, to Dismiss for Improper Venue (Doc. No. 10).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, May 13, 2022.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
